at this time will counsel for the appellant please introduce himself on the record to begin. Good morning and may it please the court. My name is Jonathan Shapiro and I represent the defendant appellant Dittleson Hernandez-Rodriguez. In this case there was no probable cause to search the vehicle defendant was driving on August 11, 2020 and the $242,000 in drug proceeds that was seized as a result of the search should have been suppressed. And this is so because the government's justification for the search was based solely on the hunch of a DEA agent who conducted the search that drugs would be found in the vehicle. Counsel is it your position that even if there was probable cause for the stop there had to be an independent basis for the subsequent search of the vehicle? Is that your argument? My position is there wasn't probable cause for either but in any case even if there were a basis for stopping the vehicle there was still no probable cause to conduct the search. But isn't the law clear and I think Judge Sarris notes this that if the automobile exception applies that there is no independent requirement for a subsequent search of the vehicle. Isn't that pretty much black letter law? I think the automobile exception requires that there be probable cause for a search of a vehicle. If under any circumstances if that vehicle was stopped on the basis of a traffic violation they still would have to be probable cause to search the vehicle. What's your authority for that proposition? Well I think the authority is the authority that we've cited. I think that is the key to the automobile exception. But the car was stopped I mean for drug reasons right if you stop the car for cross the fog line okay you need if you're going to search the car you would need probable cause of drugs to search the car. But here at least the government's argument is the probable cause pervaded the whole story so the stop of the car is just leads into the search of the car but it's all based on the same probable cause right? Yes the government claims that there was probable cause to believe that there were drugs in the car and we say that that was based on insufficient evidence and basically what boils down to the fact that it was the DEA agent's hunch. Right so the DEA agent used the word hunch but the subjective thoughts of the DEA agent don't really matter the question is objectively do these facts show probable cause right? I think that's true but I think that the characterization of an experienced federal agent that the basis for her belief was as she characterized it a hunch I think that's entitled to significant weight in the probable cause calculus. But I think the point here is that it was based on a hunch and there is no evidence. There was drug activity at the house right? Excuse me? There was drug activity at the house. There was drug activity at the house but there was no. The drugs came from New York based on the wire surveillance. There is evidence that the drug came from New York. The car came from New York. Well there were two cars that came from New York. The cars came from New York. The one that the Ford Explorer which was the one driven by the supplier from New York was not the car that was returning to New York nor was it driven by that supplier. In other words the Ford Explorer came up from New York. They claim it was driven by the New York supplier by the name of Gordo. That was not the car that returned to New York nor was it Gordo who drove the car back to New York. Rather it was a Honda Pilot which was driven at the time it was stopped by the DEA. The car, the Honda Pilot was registered in New York was it not? That's part of the record. It was registered to somebody. And the GPS tracking device indicates that your client is headed for New York. Well he was on I-95. I'm sorry? He was on I-95 going south. Whether that was to New York, New Jersey or points further south, that is speculation. But through the GPS tracking that had been done, the wiretapping had been done, the authorities had established and Judge Sarah said she looked at all the affidavits supporting the request for the wiretap and the GPS trafficking, the GPS monitoring, that there was a pattern of drugs coming from New York to this residence at Hyde Park and then money, this was the inference they drew, money was then going back to New York from the drug activity that took place in the Boston area. And in addition to that, your client was observed exiting the Honda Pilot with a screwdriver, which I think suggested to the experienced agents that he was creating a compartment that might hide money that was on its way back to New York. Well, two responses to that. In this case, there was no evidence that drugs had been brought from New York. But simultaneously to the guy, your client, being at the residence, the wire is showing that the sort of middle person is looking to sell drugs to load off some quantities of drugs. So drug activity is going on in that limited period that the person is there in the car from New York with the other person and the screwdriver. And then when he's driving back to New York, he engages in, you know, clandestine driving that makes no sense. These are, it's the constellation of these things, isn't it? Well, I think if you take out the hunch that there were drugs in the car, there's nothing else that would give the agents probable cause. Well, it doesn't have to be drugs. It could be money because drugs came, right? Come even close to establishing probable cause and to go back to. I read some of your argument as being as as you disputing that there was a connection between your client and the drug sales, that there was no probable cause to believe your client was connected to the drug sales. That's correct. But no evidence. I mean, he was there. Let's say I totally agree with you on that. Isn't the question for us focused on the Honda Pilot, whether there's probable cause to stop the Honda Pilot to believe that there's contraband in the Honda Pilot? I agree that that's the focus. And what I'm saying is that there is no evidence in this case to support the hunch that there were drug proceeds in the Honda Pilot. There was certainly no evidence of anybody putting drugs in the pilot or even taking drugs or drug proceeds from the pilot. There was no evidence that in this particular case that drugs had been transported in the Honda Pilot from New York to Boston. The in fact, on the record on page 167, the the agent is asked, can you give me one example of where that being drugs being transported from New York happened in this case? And the answer was, I'm referring to previous cases. I'm not saying this case. In other words, there was no evidence in this case that drugs had been transported from New York to Boston or that drug proceeds had been transported back. What the agent who testified as to her hunch was basing that on was her training and experience in other cases where she thought that that. Counsel, I mean, I understand why as an advocate you keep using you keep referring to the officer's reference to a hunch. That was probably not, from the government's point of view, a helpful choice of language. But as Judge Aframe has pointed out, it's really the objective facts and circumstances known to the officers. That's what matters, not how an officer testifying at trial subjectively happens to characterize it. That really. Yeah, I agree. I agree with that. Yeah. What I'm saying is there were no objective facts and circumstances other than the agent's hunch to support the notion that there were drug proceeds in this vehicle on the way back to New York. Thank you. I see that my time is up and there are no further questions. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record to begin? Good morning. Donald Lockhart for the government and may it please the Court. Let me just start with the hunch issue and then move to some of the highlights for why there was overwhelming probable cause that the Honda Pilot would contain evidence of the drug distributions that had occurred just several days before at the Hyde Park residence of Bias. First of all, it's not the agent who actually uses the word hunch. It's the defense attorney in cross-examining the agent who does that. And if you look at page 167 of the record, the question is, so the fact that that's your thinking, it must be going back there, right? I mean, that's what your, and then the agent says, that's what we believe, referring to drug proceeds. Yes, based off of our observing multiple vehicles coming and going and the intercepts, Title III intercepts, and believing the car was going back down south from Boston and that it had come from New York. Question, is it fair to say you had a hunch? Sure. That's the entire exchange. So the agent is not adopting the word hunch in any sort of legal sense. All I had was a mere hunch. She's just agreeing, yeah, I had a hunch, and probably a lot more than that. But let's go to the facts that show that there was probable cause to believe that this Honda Pilot had drug-related evidence, including drug proceeds in it on August 11th. Remember, in the May-June period, we begin to see the Title III intercepts in which Baez and LaVaria, who's the guy who drums up the business for the operation, are talking about Gordo's people coming up 95, because they love to use 95, Interstate 95, to come and get their tickets. Tickets is a word that's used several times on these intercepts, and at one point they drop pretenses and just call it money. So they're coming up from New York with the product to get their tickets. Fast forward to August 5th, 6th of 2020, the license plate readers show the Honda Pilot with defendant in it coming up from New York. Meanwhile, the Ford Explorer with Gordo coming up from New York, license plate readers capture that. They converge together at Baez's Hyde Park apartment, and the Honda Pilot with defendant in it briefly goes out to an auto body shop to get detailed. Then it comes back to Baez's apartment, parks there, and within minutes, the guy who's drumming up business for the operation, LaVaria, arrives at Baez's apartment, and he gets on the phone, and what does he say? The matters are here. Okay, the drugs have arrived, and who's there? It's the Honda Pilot. It's the defendant's car. And then you begin hearing the customers talking about prices. They're disappointed. It's very high. It's the COVID era. The price for cocaine is now somewhere around $48,000 to $51,000. Over the course of days, these drugs are distributed, and then at a certain point, you hear LaVaria say to Baez, so we're done now. Basically, we're done with the distributions. And in the same breath, he says, where's Gordo? And Baez says, well, Gordo's out shopping with my cousin, Jacqueline Batista, and sure enough, the agents conducting surveillance see Gordo and the defendant. They're out shopping. Why? Because they've just distributed all these drugs. They have some cash. This is extremely helpful. Obviously, it's critical background to what happened. I do want to ask you about testimony that was offered, I gather, by the Connecticut trooper, that he had observed the defendant's vehicle crossing the fog lane. He's driving a marked car. There's also testimony that the defendant took evasive action, got off at one exit, goes further south and comes back on I-95 at another entry point. That stuff really, it's really irrelevant, isn't it? I mean, that really has now, it perhaps could inform a basis for the stop, but my understanding, you're relying on everything that you've just been talking about as a sufficient probable cause basis for the stop, irrespective of any observations the officer made about the way in which the defendant was driving. Is that correct? Well, we would submit that even before the trooper made any of the observations that preceded the stop, or even if you exclude the fact that a drug dog twice hit on the console area of the car, where the defendant had been leaning into with a screwdriver just several hours before, even if you take that out of the picture and you focus just on the facts that I've been talking about, including the episode of the defendant day after the drugs have been distributed, leaning into the Honda Pilot with the screwdriver, and you just stop the facts at that point, you know, as the defendant's driving back to New York, we submit there was probable cause just based on that universe of facts to, number one, stop the Honda Pilot and search it under the Ross exception. But I disagree that the evasive action the defendant took is not relevant to probable cause. Let's just make sure I'm thinking about this right. Under collective knowledge, you would add it all up. So I assume the Connecticut trooper doesn't know the whole story you just told us. He's basically told by the DA. We think there's drugs in the car, but he gets imputed to him all that knowledge. The fog line strikes me as probably, well, it may have happened, it may not have, but you don't want to disclose your wire, so you talk about that. But then the evasive action, you can add that in to what happened back in Boston to decide the probable cause question. Oh, absolutely. I mean, and my point is simply that even if you just freeze frame it at, you know, the point when the defendant is leaving Hyde Park to go back to New York, we think there's probable cause right there. But, yes, no one disputes. Both sides agreed that the collective knowledge rule applies here. We get to pool all of that information. The defense has never contested the inclusion of the evasive action as part of the probable cause analysis, and it's very significant. I don't think we need this, but just again, to make sure I'm thinking about it correctly, eventually when the officer is talking to the defendant, he says some things that are inconsistent with what the officer knows from trailing, but that's after the stop. That's after the car is stopped.  The standard to stop the car in your mind is probable cause or reasonable suspicion? No. All he needs is reasonable suspicion either of the lane violation or drug nexus to the car. If there's reasonable suspicion to believe that defendant was involved in some drug conduct, the car can be stopped. Same reasonable suspicion for the fog lane. And then you could add the Stanford statement in if you think he needed it to get to probable cause? Yes. It's not just the Stanford statement. Remember that he says, I was at my aunt's in Connecticut, and he denies that he came from Boston, and those things are both palpably false. And I don't see why we wouldn't include the drug dog hits on the console area of the car for that matter. The defendant hasn't on appeal in his opening brief made any meaningful attempt. Are those drug hits inside the car? Yes. The drug dog is twice hitting on the actual console area of the car. But that's probable cause to go in the car, right? You can't. It's not a drug dog running around the car. It's a drug dog going into the car. I assume the dog is going into the car at that point. So I wonder if when you break through, you're inside the door now. Yeah. Do you need probable cause to go inside the door? That's interesting. I mean, the defense, I don't believe, has litigated that issue in the opening brief. I don't think either side has addressed it. And I'm just not sure whether a dog sort of breaking the, what you might call, getting into the passenger compartment of the car, you would need probable cause to do that. But in any event, you don't need to address that issue because even if you sort of just stop it at the point where the defendant has done the evasive action, which is significant because he clearly doesn't want the trooper to find something that's in the car, and even if you just include the false statements about where he's come from, where he's headed, and you add that into all the other things we've just mentioned, including the fact that just after Laveria has said we're all done, the next day the defendant's backing his Honda Pilot up to Bias's apartment and then leaning into it. So can I just, just for my own clarity, I mean, I don't, and I'm asking this in part to be instructed. I mean, all the stuff that goes on after the stop inside the vehicle, I mean, that's all additive, I gather. But I thought it was your position, and I think this is what Judge Sarah says in her decision, that given the basis for the stop, irrespective of everything else that happened thereafter, the authorities could search the vehicle, including this kind of a compartment, to see if there was evidence of contraband. Is that correct?  So this stuff is all good, but unnecessary. That's absolutely true. It's good, but unnecessary. Okay. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.